IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS ZACHARY PETERS,

                Plaintiff,                OPINION AND ORDER

  v.

                                                         24-cv-757-wmc

DR. JILLIAN BRESNAHAN, DR. PATRICIA HAMMEL,
DAWN KEMPEN, SARAH MALLOY, SARAH COADY,
JULIA DOE, VICKI DOE, SHERIFF WESLEY REVELS,
C.D. CHRISTOPHER WEAVER, CAPTAIN STAN HENDRICKSON,
LIEUTENANT RYAN HALLMAN, ADVANCE CORRECTIONAL HEALTHCARE,
and MONROE COUNTY, WISCONSIN,

                Defendants.

---

Representing himself, plaintiff Thomas Peters, currently a prisoner at Columbia Correctional Institution but a pretrial detainee at the Monroe County Jail at the time of the events underlying this lawsuit, filed a proposed amended complaint against various jail employees as well as Advance Correctional Healthcare and Monroe County, Wisconsin. (Dkt. #9.) Because Peters is incarcerated and has not prepaid the filing fee, the court must screen the amended complaint and dismiss any portion that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. 28 U.S.C. §§ 1915(e)(2), 1915A. The court accepts Peters' allegations as true and construes them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 537 F.3d 742, 751 (7th Cir. 2011). Because Peters' complaint includes two, separate actions arising out of different incidents involving different defendants, his complaint does not comply with Fed. R. Civ. P. 20. However, as explained below, he will be given an opportunity to choose one of these actions on which he wishes to proceed in this lawsuit.

## ALLEGATIONS OF FACT

Peters alleges that, in February 2022, Nurse Sarah Malloy discontinued his prescribed medication without reviewing his medical history. At a regular meeting with Malloy, Peters asked for injections for chronic back and shoulder issues, hormone (presumably testosterone) replacement therapy for hypogonadism, treatment for a chipped tooth, and a meeting with a mental health provider for his depression and post-traumatic stress disorder ("PTSD").[1] However, Malloy, Dawn Kempen, Lieutenant Ryan Hallman, Captain Stan Hendrickson, Christopher Weaver, and Sheriff Wesley Revels maintained that he did not need injections or testosterone treatment, adding that a cane seemed unnecessary since he was relatively young and a lower tier restriction would only be considered with supporting medical documentation.

Peters eventually met with Vicki Doe, a mental health provider, who told him that a full work-up was required, but that she was not qualified to diagnose conditions or prescribe medication, and that the matter would be postponed until his transfer or release. Peters "escalat[ed]" the issues to Lieutenant Hallman, Captain Hendrickson, Weaver, and Revels, but they told him that everyone has issues adjusting to prison, and he needed to have "thicker skin." However, they did provide him with a bottom bunk in a lower tier cell along with approved shoes in place of a cane.

Peters alleges that the combined effects of his untreated conditions eventually caused him to have a slipped disc and compressed nerve in his lower back, causing pain, numbness, tingling, and an umbilical hernia. His untreated hypogonadism caused him weight gain,

---

[1] Peters alleges that he notified unidentified jail staffers that he had been denied his cane and was placed on an upper tier cell. After he complained, Peters was initially placed in a lower tier cell, but he was later returned to an upper tier cell.

2

anxiety, stress, acne, mood swings, reduced cognitive function, energy loss, sleepiness, and incontinence.  Peters filed grievances about his untreated conditions, but unspecified staff retaliated against him for filing them, and Kempen and Nurse Malloy told him that it was their decision, and not his outside doctors' decision, how to treat his conditions.  As Peters' cognitive function continued to decline and he filed grievances, Kempen warned Peters to stop filing grievances unless he wanted to be issued a conduct report.  After his grievances were denied, Captain Hendrickson told Peters, "the squeaky wheel doesn't always get the grease, but sometimes [is] laid to rest and replaced," which Peters interpreted to be a threat.

After Peters' family members complained, staff ordered lab work, revealing that he had low testosterone, but Kempen and Nurse Coady claimed that his low testosterone would only affect his libido.  Peters complained to Lieutenant Hallman, but Dr. Jillian Bresnahan determined that his treatment was reasonable.  Peters alleges that Dr. Bresnahan was biased because she was the "vice president of the company rendering the decision."  Peters asserts that he complained to every defendant about the denial of care, but Nurse Malloy and an unidentified Regional Nurse Manager told him that 90 percent of his "keep on person" medication would be revoked because he "pissed off" Lieutenant Hallman and Captain Hendrickson.

After a traveling nurse advised Peters to "slow down" with the grievances because Nurse Coady was trying to figure out who had filed them, Peters alleges that Coady swapped his medication with another inmate's medication.  Peters confronted Coady, who told him that it was an "honest mistake" and it "wouldn't kill him."  Peters and the other inmate became violently ill, but the other inmate was allowed to see a nurse and receive treatment while Peters

3

was not. Peters complained, but Lieutenant Hallman claimed that staff followed proper procedure.

Several days later, Peters alleges that he fell asleep while walking because of his hypogonadism, twisting his knee in the process. Peters reported the incident, but Dr. Patricia Hammel and Kempen believed that the issue was not urgent. Eventually, however, Nurse Coady sent Peters to the emergency room where he was diagnosed with a "soft tissue injury," given an injection for pain, and ordered to return for further imaging. Medical staff provided him with a pillow, but it was immediately confiscated by an unidentified jail staff member. Peters also was not allowed to return to the medical facility for imaging, and Lieutenant Hallman and Captain Hendrickson denied his requests for photo documentation of his knee injury. A case investigator then took photos of Peters' swollen knee, and Sergeant Jeff Schwanz, Lieutenant Hallman, and Captain Hendrickson, authorized Kempen, Nurse Malloy, and Dr. Hammel to put plaintiff in segregation for "observation," which Peters interpreted as retaliatory.

Peters alleges that he was still without hormone replacement therapy and suffering from lumbar issues, knee pain, a hernia, depression and suicidal ideation. Dr. Hammel "prolonged treatment" until she eventually prescribed him with testosterone and authorized treatment of his spine issues. Peters alleges that, due to the delay, he required spinal ablation, or deadening of the nerves in his spine. On trips to the hospital, a transport officer was instructed to keep tabs on plaintiff, and limit what he said to outside doctors because of Peters' litigation in another case.

Later, Nurse Julia Doe refused to schedule appointments for Peters, so he would arrange his own medical appointments. Peters complained to Hallman and Hendrickson, but Julia Doe

4

denied having refused to schedule appointments, and then retaliated against Peters by refusing to provide certain medications and forcing him to access an upper tier cell from February 2024 to June 2024. Nurse Vickie Doe instructed Peters to have a nighttime snack to help with his anxiety and depression, but Nurse Coady, Julia Doe, Dr. Hammel, Lieutenant Hallman, Captain Hendrickson, Weaver, and Sheriff Revels refused to provide him with a snack.

In addition, Nurse Julia Doe incorrectly distributed his medication on multiple occasions, which plaintiff caught and pointed out. Nurse Coady also added "trazadone" to Peters' regimen without disclosing it.

ANALYSIS

A plaintiff may bring claims against different defendants in the same lawsuit "only if [those] claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012) (quoting Fed. R. Civ. P. 20(a)(1)(A)). As the Court of Appeals for the Seventh Circuit has explained, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Id.*

Lawsuits that include so many claims, defendants, and incidents are difficult for defendants to respond to and for the plaintiff and the court to manage. *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) ("[U]nrelated claims against different defendants belong in separate lawsuits . . . to prevent the sort of morass produced by multi-claim, multi-defendant suits.") (quotation marks omitted). When a plaintiff includes too many claims and defendants in one case, the court has discretion to require the plaintiff "to file separate complaints, each

5

confined to one group of injuries and defendants," *Wheeler*, 689 F.3d at 683, which the court will exercise here.

Here, Peters' amended complaint alleges at least two different claims. *First*, Peters alleges that many defendants, including Nurses Malloy and Coady, Kempen, Vickie Doe, Dr. Hammel, Lieutenant Hallman, Captain Hendrickson, Weaver, and Sheriff Revels, failed to treat his serious medical conditions -- hypogonadism, chronic back issues, and mental health issues.

*Second*, Peters asserts issues with medication pass at the jail, alleging that he became violently ill after Nurse Coady gave him the wrong medication, he caught Nurse Julia Doe incorrectly distributing medication, and Coady improperly added trazadone to his medication regimen without telling him.

Only *one* group of claims arising from an occurrence identified above may proceed under this case number. Therefore, Peters must decide which group of claims will proceed under this case number, and whether he wishes to proceed with any other group of claims in a separate lawsuit or lawsuits. If Peters chooses a set of claims related to one of the two issues identified above by **September 8, 2025**, the court will treat that portion of his current complaint as the operative pleading and screen those claims. If Peters wishes to pursue claims arising from the other, separate incidents, he may only do so in separate lawsuits. If he does not file separate suits, those claims will be dismissed without prejudice, and he will be free to bring them another time, so long as he does so before any applicable statute of limitations has run. Peters may also object to the court's decision to group his claims into these separate lawsuits, but he still must choose one set of the two sets of claims on which to proceed by the deadline. If Peters decides to pursue separate lawsuits based on allegations unrelated to those he decides to pursue under

this case number, he will be required to pay a separate filing fee for each additional lawsuit on which he chooses to proceed.

## ORDER

IT IS ORDERED that:

1) Plaintiff Thomas Peters may have until **September 8, 2025**, to inform the court on which set of the two, distinct claims identified above he wishes to pursue in this lawsuit.

2) It is plaintiff's obligation to inform the court of any new address. If he fails to do so, his claims may be dismissed with prejudice for failure to prosecute. The clerk of court is directed to send plaintiff copies of this order and the court's prisoner complaint form.

Entered this 18th day of August, 2025.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge